UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | |
|---|---|
| **U.S. Army ROTC ECP Cadet JOHN DOE** | |
| Plaintiff | Case No.:  1:22-cv-691 |
| v. | |
| **JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States of America; | |
| **LLOYD J. AUSTIN, III**, individually and in his official capacity as Secretary of Defense, United States Department of Defense; and | |
| **CHRISTINE ELIZABETH WORMUTH,** individually and in her official capacity as United States Secretary of the Army, | |
| Defendants | |

**COMPLAINT**

Plaintiff, U.S. Army ROTC ECP Cadet John Doe, by and through counsel, sues the

Defendants and for his cause of action, hereby states as follows:

**INTRODUCTION**

1.      Plaintiff is a resident of Maryland, a member of the Pennsylvania National

Guard, and a student cadet in the United States Army Reserve Officer Training Corps

(ROTC) Early Commissioning Program (ECP)and is projected to graduate from that

program in May, 2022, and receive a reserve officer commission in the U.S. Army with a

subsequent service obligation as a Second Lieutenant in the Army National Guard.

2.      Plaintiff objects to receiving any of the currently available mRNA COVID-19 vaccinations based on his sincerely held religious beliefs. He further objects to any non-mRNA COVID-19 vaccination administered before June 1, 2022, because he was infected with COVID-19 in December 2021, has natural immunity, and the two physicians who treated him have provided recommendations that he receive no vaccination of any type earlier than June 1, 2022.[1]  As a student cadet, he is not and has never been under the care of any U.S. Army physician or government medical service provider for COVID or COVID symptomatic treatment.

3.      This action is based upon the United States Constitution, the Religious Freedom Restoration Act, the Administrative Procedure Act, Department of Defense regulations, and Department of the Army regulations and concerning both a) the denial of Plaintiff's fundamental right to the free exercise of religion and b) protection from agency action that is unlawful, contrary to law, and arbitrary and capricious.

4.      Plaintiff challenges the policies and actions detailed below on their face and as applied to Plaintiff.

5.      Defendants' policies and actions deprived and will continue to deprive Plaintiff of his paramount rights and guarantees under the United States Constitution and federal law, including by breach of its contractual obligations under the ROTC ECP.

6.      Defendants committed each and every act alleged herein under the color of law and authority.

---

[1] Currently several effective non-mRNA/non-fetal tissue developed COVID-19 vaccines are available worldwide, with one ("Novavax") in the final stages of FDA Emergency Use Authorization for administration in the U.S.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

8.      The Court also has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

9.      The Court also has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

10.     The Court also has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiff's religious exercise has been burdened by Defendants.

11.     The Court also has jurisdiction to review Defendants' unlawful actions and inactions and enter appropriate relief under the Administrative Procedure Act, 5 U.S.C. §§ 701– 706

12.     The Court also has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-92 (1949).

13.     This Court has authority to award the requested relief pursuant to 42 U.S.C. § 2000bb-1 and *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020); the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are officers and employees of the United States and agencies of the United States and the Plaintiff is a life-long resident of Maryland.

**PLAINTIFF**

15.     Plaintiff is a nineteen-year-old male enrolled in the U.S. Army ROTC Early Commissioning Program (ECP). He is scheduled to graduate that program on or about May 15th, 2022 and be commissioned as a Second Lieutenant in the National Guard. He is currently a drilling member of the Army National Guard.

16.     Plaintiff is a lifelong Christian and member of the Orthodox Christian church. He attended a Christian high school from which he graduated in 2020. Plaintiff attended the March for Life demonstrations against abortion in Washington D.C. each year.

17.     Plaintiff is a member of the National Honor Society, and his exceptional academic performance in high school made him extremely competitive in respect to college admissions. He was active in sports, including cross-country and water polo at the U.S. Naval Academy junior sports program. Plaintiff earned Eagle rank in Scouts BSA (legacy Boy Scouts of America) in 2018 and graduated from that organizations' resident junior advanced leadership programs, and subsequently served as an advanced leadership instructor at BSA's Philmont, New Mexico, scout reservation. He is a 2018 graduate of the Maryland Boys' State program.

18.     As a result of Plaintiff's competitive acumen, he was accepted on his merit into the highly select U.S. Army Reserve Officer Training Corps Early Commissioning Program (ROTC ECP) and with a full merit-based U.S. government scholarship. The ECP program provides an accelerated, intense, two-year resident military officer training experience for competitive students and candidates. After graduation, cadets are commissioned in the reserve rank of U.S. Army Second Lieutenant, exit the ROTC cadet program, and immediately begin serving as junior officers in U.S. Army Reserve or

National Guard units while they complete the remaining two years of their four-year degree obligation. Upon completion of his four-year degree (2024), Plaintiff will be eligible to compete nationwide for a Regular Army commission.

19.     But for the actions of the Defendants', Plaintiff would on May 12th, 2022, be commissioned as a Reserve officer and begin serving in that rank in the National Guard. He is academically in the top of his class, and per contract, the U.S. government will cover the costs of his subsequent required two years of college.

20.     However, Plaintiff has been informed that his medical exemption request has been denied further consideration, and that his religious exemption request is likely not to be adjudicated earlier than September 2022, and that he is now, and will remain, ineligible for commissioning on May 12, 2022, without a completed COVID vaccine.

## DEFENDANTS

21.     Defendant Joseph R. Biden, Jr., is President of the United States of America and Commander in Chief of the Armed Forces. U.S. Const. art. II, § 2. On or about July 29, 2021, President Biden directed the Department of Defense to vaccinate all service members, including Plaintiff. President Biden is sued in his official capacity.

22.     Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, which requires the United States Armed Forces to vaccinate all service members, including Plaintiff. Secretary Austin is sued in his individual and official capacities.

23.     Defendant United States Department of Defense (DoD) is an executive branch department that coordinates and supervises all agencies and functions of the

government related to the United States Armed Forces, including the vaccination policies at issue herein.

24.     Defendant Christine Elizabeth Wormuth is the United States Secretary of the Army. Secretary Wormuth issued a directive on September 14th, 2021, which required the U.S. Army to vaccinate all U.S. Army service members, including Plaintiff. Secretary Wormuth is sued in her individual and official capacities.

## FACTUAL BACKGROUND

**The President's Orders to Vaccinate the Armed Forces**

25.     On or about July 29, 2021, the President directed DoD to add the COVID-19 vaccine to its list of required immunizations for all service members. See The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://www.whitehouse.gov/briefing-    room/statements-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actions-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); Meghann Meyers and Howard        Altman,        Military        Times, Oct.   21,     2021, https://www.militarytimes.com/news/your-military/2021/07/29/biden-orders-pentagon-to- consider-mandatory-covid-19-vaccination/.

**The DoD's Vaccine Mandate**

26.     On August 24, 2021, Secretary Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (the "DoD Vaccine Mandate").

27.     The DoD Vaccine Mandate directs DoD to vaccinate all active duty and reserve service members against COVID-19.

28.     The DoD Vaccine Mandate states that service members who previously contracted COVID-19, and now have active antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.

29.     The DoD Vaccine Mandate provides that DoD will only use or administer COVID- 19 vaccines that are fully licensed by the United States Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance.

30.     The DoD Vaccine Mandate provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated.

31.     The DoD Vaccine Mandate provides that service members actively participating in COVID-19 clinical trials are exempted from the DoD Vaccine Mandate until the trial is complete.

32.     The DoD Vaccine Mandate states that DoD will implement the DoD Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019.

33.     The DoD Vaccine Mandate states that the Military Departments, including the Navy, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.

34.     The DoD Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

35.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

**The Army's Vaccine Mandate and Deadlines**

36.     On September 14th, 2021, the Secretary of the Army ordered that all active-duty units be fully vaccinated by Dec. 15, 2021, and Reserve and National Guard units be fully vaccinated by June 30, 2022. [See Congressional Research Service, The Military's Covid 19 Vaccination Mandate, 11/19/2021, attached hereto as exhibit __ and prayed to be made a part of the record herein].

37.     According to the mandate, soldiers may request administrative or medical exemptions as outlined in Army Regulation 600-20 and AR 40-562, as well as the new

Army Directive 2021-33 that provides supplementary guidance on exemption requests. [U.S. Army Public Affairs, 09/14/2021].

38.     Soldiers with previous COVID-19 infections are not automatically exempt from full vaccination and should consult their primary care managers. Soldiers pending exemption requests must continue to comply with all other applicable force health protection measures applicable to unvaccinated people. [Id.]

39.     Soldiers who have completed an FDA Emergency Use Authorization or World Health Organization-authorized series of vaccinations are fully vaccinated. Soldiers are only considered fully vaccinated two weeks post completion of a two-dose series vaccine or two weeks post completion of a single dose vaccine. [Id.]

40.     Army Regulation (AR) 40-562 provides for two types of exemptions to required vaccinations – medical and administrative. Medical exemptions may be permanent or temporary (up to 365 days).  AR 40-562, Subsection 2-6 a(1)(b) establishes that a documented infection is sufficient to warrant consideration of a temporary exemption for medical purposes.  Administrative exemptions include religious exemptions.


**U.S. Army Cadet Command Establishes an Arbitrary Deadline for ROTC ECP Cadets**

41.     After the U.S. Army issued its deadlines for active-duty soldiers (by December 15, 2021) and Reserve and Guard soldiers (June 30, 2022), the U.S. Army Cadet Command who administers and overseas all Army ROTC programs, including the ECP program, established its own earlier deadline of April 30, 2022.  On or about, February 1, Cadet Command arbitrarily changed the deadline from April 30 to February 22, 2022.

**Plaintiff Tests Positive for COVID-19 in December 2021**

42.     Plaintiff tested positive for COVID-19 while on semester break in December 2021. He experienced mild Covid 19 symptoms. After the most prominent symptoms subsided, Plaintiff noticed that, aside from loss of taste, food was getting stuck in his esophagus, and it was difficult to swallow. He also noticed activity-limiting shortness of breath/dyspnea during exercise, including light exercise. He was diagnosed with an enlarged spleen.

43.     Because Plaintiff is not an active-duty soldier and the COVID infection was naturally not considered as an illness or injury contracted in the 'line of duty,' e.g., while on Guard or Reserve duty, Plaintiff received no services from government or military medical providers.  Instead, he consulted with his civilian primary care providers who prescribed an oral steroid dosage to combat what is now considered to be "long term" or "long haul" COVID symptoms, i.e., temporary lasting effects of the infection.  "*About one out of every three people who had coronavirus develops symptoms of long COVID, defined by the U.S. Centers for Disease Control and Prevention as a group of symptoms that linger for weeks or months after a COVID-19 infection. These symptoms can cause problems in multiple organs and body systems at once. Even people who had a mild case of the virus can have persistent COVID symptoms that disrupt their daily life.*" (UCLA Health, https://www.uclahealth.org/medical-services/long-covid?msclkid=f0195632a5fb11ecbddedc45fe26f20e ).

44.     Plaintiff's primary care providers also recommended that, since he was still recovering from COVID symptoms, that he has strong natural immunity, and given the increasing understanding of "long haul" COVID symptoms within the medical community

and the increased risks of side effects after attaining natural immunity, he should *not* receive any vaccination earlier than June 1, 2022.

**Plaintiff Files a Request for Temporary Medical Exemption**

45.     On 1/14/2022, Plaintiff filed a request for temporary exemption of the COVID vaccine mandate and pursuant to AR40-562, Subsections 2-6 a(1)(b), i.e., documented infection, and including his medical care provider's written recommendations including that he not receive any COVID injection, whether mRNA or traditional, before June 1, 2022.

46.     In that request and in conversations with his supervisors or other relevant military personnel on his behalf, he made clear that he would willingly get vaccinated after the date specified by his provider (June 1, 2022) with any of the WHO/FDA approved *non*-mRNA vaccines, specifically referencing the *Novavax* vaccine which has been developed using traditional means and methods, not unlike traditional flu vaccines, has a documented success rate of 98%, and is currently in the final stages of the FDA EAU procedure before distribution for use. ("The U.S. is About to Approve a Fourth COVID Vaccine…") https://fortune.com/2022/03/07/fourth-covid-vaccine-novavax-anti-vax-protein-mrna/?msclkid=0ae085b6a6c611ecb79488922acc94fe)

47.     On February 9, 2022, Plaintiff supplemented his request for temporary medical exemption having been examined by another civilian care provider and a pulmonary specialist. The care provider indicated that Plaintiff's COVID infection breathing issues, although not permanent, required the temporary use of an inhaler for the administration of medication. She confirmed the recommendation of the first physician,

i.e., that Plaintiff should not receive any COVID vaccination until further notice, and not before six months since recovery from his infection and onset of natural immunity.

48.     Currently all U.S. Army National Guard and Reserve units, per the U.S. Army mandate, have a vaccination deadline of June 30, 2022, some six weeks after Plaintiff's commissioning date of May 12th.

**The CDC Now Recognizes Strong Immunity Post-Infection**

49.     According to the NIH, "[t]he immune systems of more than 95% of people who recovered from COVID-19 had durable memories of the virus up to eight months after infection." (NIH "Lasting Immunity Found After Recovery from COVID-19").  The CDC reported on January 22, 2022, that those who have had a previous diagnosis – vaccinated or unvaccinated – were at less risk for reinfection/hospitalization than those vaccinated but with no previous diagnosis.

50.     Drs. Jayanta Bhattacharya and Martin Kulldoff—professors of medicine at Stanford University and Harvard Medical School, respectively—concluded that "those who have recovered from a SARS-CoV-2 infection possess immunity as robust and durable as that acquired through vaccination." Zywicki v. Washington, 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021). Dr. Hooman Noorchashm, M.D., Ph.D.—who is well-published in the medical field and has served multiple prestigious faculty appointments—reached a similar conclusion in his own sworn declaration. He concluded that "[a] series of epidemiological studies have demonstrated to a reasonable degree of medical certainty that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than

the most effective vaccines currently available." *Zywicki v. Washington*, 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021).

51.     The COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue. See Patricia Kime, DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-        linked-covid-19-vaccines.html.

52.     The CDC is now recommending longer periods between the first and second vaccine injections after review of accumulated data to decrease adverse reactions, including myocarditis in males aged 18-39. Other nations are limiting the boosters and initial vaccinations for periods of up to five months following covid infection for the same reasoning, i.e., adverse reactions to a second dose of covid after antibodies have been formed either from vaccine or previous diagnosis yielding natural immunity.

53.     Having had COVID and according to the NIH's findings, Plaintiff will have a strong immunity protection for at least eight months following his December 2021 infection.  This immunity will not only provide protection for himself, but also decrease the chance that he will become reinfected and thereby spread the virus to others in his unit.

**Plaintiff Files a Request for Religious Exemption Based on His Sincerely Held Religious Objections to COVID-19 Vaccinations**

54.     Prior to the Army Cadet Command's accelerated February vaccination deadline, Plaintiff on 2/20/2022 filed a Request for Religious Exemption to the mRNA vaccines currently approved for Emergency Use Authorization by the FDA in the U.S.

55.     Plaintiff objects to receiving any of the currently approved COVID-19 mRNA vaccinations based on his sincerely held religious beliefs.

56.     Plaintiff is a lifelong member of a Christian faith that rejects abortion, graduated from a Christian high school that taught and reinforced those values, and he believes that abortion is the impermissible taking of an innocent life in the womb and, increasingly, legally after birth.  He voluntarily joined the March for Life in Washington D.C. while a student.

57.     As a result of his sincerely held religious beliefs, Plaintiff cannot morally receive the currently approved vaccinations because of the established connection between them, their testing, development, or production using aborted fetal cell lines. Johnson and Johnson has recently admitted that its vaccination was also produced as a result of the same testing procedures.

58.     Plaintiff believes that receiving a COVID-19 vaccine that was tested, developed, or produced using aborted fetal cell lines would force him to violate his sincerely held religious belief, causing him to participate in the abortion enterprise, which he believes would be immoral and highly offensive to God.

59.    Plaintiff holds a sincere religious belief that the human body is God's temple and that he should avoid anything that adversely alters or may modify his body's natural functions in a manner not designed by God.

60.    The COVID-19 vaccine uses mRNA technology, which causes human cells to produce a spike protein they would not normally produce.  See Centers for Disease Control, "Understanding mRNA COVID-19 Vaccines," http://www.cdc.gov/coronavirus/2019-ncov/ vaccines/different-vaccines/mrna.html (Mar. 4, 2021).

## Defendants Deny Plaintiff's Request for Temporary Medical Exemption Through June 1, 2022

61.    Even though two treating physicians recommended that Plaintiff not receive any COVID vaccination earlier than June 1, 2022, Defendants disagreed without any military or government physician having diagnosed, treated, or even seen the Plaintiff.

62.    Defendants' agents at U.S. Army Cadet Command extended Plaintiff's vaccination deadline only to March 10, 2022, ignoring the treating physicians' recommended June 1, 2022, (not earlier than) date. Defendants provided no reasoning in support of this arbitrary decision.

## Defendants' Have Granted Only One Religious Exemption Request to Date

63.    Plaintiff has been informed that a religious exemption request is not likely to be approved, and otherwise not likely to be adjudicated before the projected commissioning/graduation date of May 15th, 2022.  As of the date of this filing, the U.S.

Army has granted <u>one</u> religious waiver request. ("Army Grants First Religious Waiver for Soldier Seeking Coronavirus Vaccine Exemption," Stars and Stripes Magazine, March 11, 2022.   https://www.stripes.com/branches/army/2022-03-11/army-soldier-coronavirus-vaccine-mandate-religious-exemption-5310646.html?msclkid=eb2593b3a55411eca88519931f0023a6).

64.     Defendants' agents at Cadet Command have informed Plaintiff that he is not eligible to be commissioned as a reserve officer on May 15th, 2022, without either being fully vaccinated or having an approved religious exemption, and hence will be ineligible to serve as an officer in the rank he has otherwise earned, i.e., Second Lieutenant in the National Guard.

65.     Defendants' agents AT Cadet Command have further informed the Plaintiff that even though he will be ineligible to be commissioned as a reserve officer and serve in the rank of Second Lieutenant in the National Guard, he will still be obligated to fulfill his service obligations by serving in the National Guard, not as a commissioned reserve officer, but in an enlisted capacity.  That is, he will still be in the same environment, in the same vaccination status, and with the same natural immunity, yet in enlisted rank and not the rank that he has earned and is otherwise qualified. This punitive measure is arbitrary and capricious and is to be enforced only because he has chosen to follow the directions of his actual medical providers and/or has held fast to his sincere religious beliefs.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiffs' Rights under the Religious Freedom Restoration Act Duty**
**Disqualification**
**42 U.S.C. § 2000bb et seq.**

66.     Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

101.    The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq. (RFRA), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

67.     The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

68.     Congress found that "governments should not substantially burden religious exercise without compelling justification," and that "the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests."

69.     In Burwell v. Hobby Lobby Stores, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 710 (2014) (citing Smith, 494 U.S. at 877).

70.     The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. Hobby Lobby, 573 U.S. at 724.

71.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

72.     BUPERSINST 1730.11A provides that "[e]ach request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request. Requests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied."

73.     Army Regulation (AR) 40-562 provides that "[i]mmunization requirements may be waived when requested by the member based on religious objection."

74.     107.    Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

75.     Plaintiff has a sincerely held religious beliefs that he cannot receive the mandated COVID-19 vaccine.

76.     Defendants' Vaccine Mandates substantially burden Plaintiff's sincerely held religious beliefs by requiring him to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm.

77.     The adverse actions to which Plaintiff is subject includes first and foremost denial of his accession to the rank of Second Lieutenant which he has earned, as well as government recoupment of money spent training the Plaintiff, including post-secondary education costs, involuntary separation, relief for cause from leadership positions, removal

from promotion lists, inability to attend certain military training and education schools, loss of pay, placement in a non-deployable status.

78.   Defendants' Vaccine Mandates fail strict scrutiny, and they have no compelling government interest in requiring Plaintiff to violate his sincerely held religious beliefs by taking a COVID-19 vaccine in order to receive a commission in the National Guard, especially after setting an arbitrary date contrary to that which allows him to continue to serve in the same.

79.   Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, natural immunity is a stronger defense against the virus than those who have been vaccinated and not contracted the virus, as now recognized by the CDC,

80.   Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing. This is logically more effective and less burdensome in units of the National Guard who meet and train on a parttime basis for most of the training year.

81.   Indeed, if Defendants are concerned about COVID-19 affecting its personnel, it would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-     ncov/science/science-briefs/fully-vaccinated-people.html.

82.     Accordingly, Defendants' Vaccine Mandates violate Plaintiff's rights under RFRA and are unconstitutional and/or are unconstitutional as applied to him.

83.     Because of Defendants' policy and actions, Plaintiff is calculated to suffer, and continue to suffer, irreparable harm, including economic harm, and is entitled to an award  equitable and economic relief.

## SECOND CAUSE OF ACTION
**Violation of Plaintiffs' First Amendment Right to the Free Exercise of Religion Duty Disqualification**
**U.S. Const. Amend. I**

84.     Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

85.     The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

86.     The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

87.     Defendants' Vaccine Mandates substantially burden Plaintiff's sincerely held religious beliefs by requiring him to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm.

88.     The adverse actions to which Plaintiff is subject includes first and foremost denial of his accession to the rank of Second Lieutenant which he has earned, as well as

government recoupment of money spent training the Plaintiff, including post-secondary education costs, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of pay, placement in a non-deployable status.

89.    Defendants' Vaccine Mandates fail strict scrutiny, and they have no compelling government interest in requiring Plaintiff to violate his sincerely held religious beliefs by taking a COVID-19 vaccine in order to receive a commission in the National Guard, especially after setting an arbitrary date contrary to that which allows him to continue to serve in the same.

90.    Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, natural immunity is a stronger defense against the virus than those who have been vaccinated and not contracted the virus, as now recognized by the CDC,

91.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing. This is logically more effective and less burdensome in units of the National Guard who meet and train on a parttime basis for most of the training year.

92.    Indeed, if Defendants are concerned about COVID-19 affecting its personnel, it would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021),

https://www.cdc.gov/coronavirus/2019-       ncov/science/science-briefs/fully-vaccinated-people.html.

93.    Accordingly, Defendants' Vaccine Mandates violate Plaintiff's rights under the First Amendment and are unconstitutional and/or are unconstitutional as applied to him.

94.    Because of Defendants' policy and actions, Plaintiff is calculated to suffer, and continue to suffer, irreparable harm, including economic harm, and is entitled to an award equitable and economic relief.

### THIRD CAUSE OF ACTION
**Violation of Plaintiffs' Rights Under the Administrative Procedure Act**
**Agency Action that Is Arbitrary, Capricious, or an Abuse of Discretion**
**(5 U.S.C. §§ 701-06)**

95.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

96.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained of herein are each a "rule" under the APA, id. § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," id. § 704.

97.    The APA prohibits agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Vaccine Mandates and Defendants' actions implementing the Vaccine Mandates are arbitrary, capricious, and an abuse of discretion for several reasons.

98.    BUMEDINST 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013, establishes DoD-wide policy and quality standards for immunization and chemoprophylaxis. BUMEDINST 6230.15B,

Paragraph 2-6 provides for two types of exemptions from DoD immunization requirements: medical and administrative.

99. U.S. Army Regulation 40-562 mirrors the above and provides at paragraph 2-6(a) an exemption to immunization based on "evidence of immunity based on serologic tests, *documented infection*, or similar circumstances." *Emphasis added*.

100. While not providing any medical services or physical examinations of the Plaintiff related to his COVID infection, and while ignoring the recommendations of his treating physicians who relied upon the emerging knowledge in the medical field related to COVID and treatment of "long haul" symptoms of the same, as well as ignoring the latter's reliance on emerging guidance provided by the CDC as to immunity, the Defendants in deciding to not commission the Plaintiff have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

100. By unilaterally changing the Department of the Army's June 30, 2022, vaccination deadline set for National Guard and Reserve soldiers to an earlier date for ROTC cadets destined for the National Guard or Reserves, a date that has already passed, the Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A). This is particularly evident, and the measure appears punitive, in that it allegedly calculated to provide a ready and healthy force, yet the Plaintiff will be in the same physical position and part time military service as a drilling National Guardsman, only without his otherwise earned commissioned rank. He has acquired natural immunity, and thus is more protected than those soldiers fully vaccinated but without natural immunity.

111.    Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, natural immunity is a stronger defense against the virus than those who have been vaccinated and not contracted the virus, as now recognized by the CDC,

112.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing. This is logically more effective and less burdensome in units of the National Guard who meet and train on a parttime basis for most of the training year.

113.    Indeed, if Defendants are concerned about COVID-19 affecting its personnel, it would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-    ncov/science/science-briefs/fully-vaccinated-people.html.

114.    Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

115.    Plaintiff has no adequate remedy at law.

116.    Absent injunctive and declaratory relief against the Vaccine Mandates, Plaintiff will be harmed by being denied a commission in the Army National Guard which he has otherwise earned and for which he is qualified. Denial of his request for medical exemption through June 1, 2022, will result in irreparable harm even if Defendants, who

have to date only approved one other religious exemption request, approve Plaintiffs and allow him to later receive a commission, because he will have lost irreplaceable military leadership time and critical officer evaluations which will affect his competitiveness for career advancement among his peers and cohort, and affect his competency for a Regular Army commission.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment against Defendants and provide Plaintiff with the following relief:

(A)     A declaratory judgment that Defendants' vaccination policies challenged in this Complaint are unconstitutional as applied to him, and violate Plaintiff's rights under the First Amendment to the United States Constitution;

(B)     A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the Religious Freedom Restoration Act, and are unconstitutional as applied to him;

(C)     A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf, from preventing Plaintiff's accession and commission to the rank of Second Lieutenant in the National Guard; and

(D)     A directive in the nature of mandamus and pursuant to 28 U.S.C. § 1361 that Plaintiff be on May 12th, 2022, commissioned in the rank of Second Lieutenant in the National Guard per the Defendants' contractual obligations; and

(E)     A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the Administrative Procedure Act;

(F)     A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the vaccination policies challenged in this Complaint;

(F)     An order declaring unlawful and setting aside Defendants' vaccination policies;

(H)     Actual damages, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), in the amount of pay Plaintiff will lose as a result of Defendants' discriminatory vaccine policies under the Religious Freedom Restoration Act;

(J)     Nominal damages against Defendants in their individual capacities, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), for the violation of Plaintiff's rights under the Religious Freedom Restoration Act;

(K)     Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(L)     All other further relief to which Plaintiffs may be entitled.


Respectfully submitted this 21st day of March, 2022.



Marc D. Schifanelli, Esquire

*Marc Schifanelli*

District Bar No. 27753
P.O. Box 1023
Stevensville, Maryland 21666
240-882-2402
marc@schiflaw.com

Counsel for the Plaintiff